IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **CYNTHIA MOORE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )  Case No. 5:09-cv-02291-JEO |
| | ) |
| **BIBB MEDICAL CENTER,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

The above-styled action is brought by the plaintiff, Cynthia Moore (hereinafter "Plaintiff"), to recover damages on her claim that the defendant, Bibb Medical Center (hereinafter "BMC") violated her rights under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*. ("FMLA"). The parties have consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c). (Doc. 34).[1] It is before the court on BMC's Motion for Summary Judgment as to Plaintiff's single claim against it, filed on October 13, 2010. (Doc. 22). The motion has been fully briefed and is now subject to the court's review. Upon consideration, the motion is due to be denied.

**I.     FACTUAL HISTORY**[2]

BMC is a healthcare provider in Bibb County, Alabama. It first hired Plaintiff in 2002 as a nursing assistant. Less than one year into her employment, Plaintiff voluntarily resigned. In

---

[1] References herein to "Doc.___" are to the document number assigned by the Clerk of the Court in the court file.

[2] These are the facts for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts'") (citation omitted). Facts are undisputed unless otherwise noted. Where the facts are in dispute, they are stated in the manner most favorable to the plaintiff. *See Fitzpatrick v. City of Atlanta*, 2 F.2d 1112, 1115 (11th Cir. 1993).

September 2004, BMC rehired Plaintiff as a nursing assistant. Six months later, she again voluntarily resigned. The record does not provide the reasons why Plaintiff resigned on either occasion.

BMC hired Plaintiff a third time in June 2005, three months after she last resigned. During this tenure, Plaintiff became certified as a nursing assistant and rose to the position of Certified Nursing Assistant ("CNA").[3] As a CNA, Plaintiff was required to perform a wide range of tasks, including bathing patients, serving and feeding, obtaining vital signs, assisting with patients' range of motion exercises, assisting with patients' activities, collecting specimens, and repositioning patients every two hours as needed. She also assisted with catheterizing patients, admitting and discharging patients, and providing postmortem care as assigned, in addition to maintaining supply stocks, directing visitors and ambulatory residents, and delivering dirty linens to be laundered. The record contains no evidence that Plaintiff had a disciplinary record with BMC, and she appears to have been regarded by her supervisor, Julie Darden, as a reliable and competent employee. (Darden Dep. pg. 19).

Plaintiff held her position with BMC until she injured her back while assisting a patient on January 19, 2009. She was immediately treated by Robin Birchfield, a nurse practitioner at BMC. Ms. Birchfield prescribed Plaintiff pain medication and excused her from work through January 21, 2009.

Plaintiff did not return to work on January 21. On January 22, Plaintiff was treated for continuing back pain by Dr. Karen Ballard, BMC's physician for work-related injuries. Dr.

---

[3] The record does not indicate whether this was an official promotion with BMC, involving an increase in pay or job responsibilities.

Ballard excused Plaintiff from work until January 30.  On January 27, Dr. Ballard ordered Plaintiff to undergo an MRI, and excused Plaintiff from work through February 6.  Because the MRI was inconclusive, Dr. Ballard ordered an ultrasound, which revealed a tumor on Plaintiff's ovary.  Dr. Ballard excused Plaintiff from work until February 12.

On February 11, Plaintiff appeared at Dr. Ballard's office to request an extended excuse from work.  She met with Lisa Burns, a medical assistant for Dr. Ballard, and informed Ms. Burns that she was scheduled to see Dr. Charles Mentel, a gynecologist, for possible surgery to remove the tumor.  Plaintiff's worker's compensation leave was scheduled to expire the following day.  Ms. Burns signed a work excuse note for Plaintiff, excusing her from work "until further notice of surgeon."

The following day, February 12, Dr. Mentel scheduled Plaintiff for surgery on March 5. Later that day, Plaintiff met with Kimberly Hayes, director of Human Resources for BMC, to inform Ms. Hayes that her surgery had been scheduled and to request medical leave.  Ms. Hayes gave Plaintiff a packet of FMLA paperwork and instructed her to fill out the forms and return them to Ms. Hayes as soon as possible.

On February 20, Ms. Hayes had not received Plaintiff's completed FMLA paperwork. She sent a certified letter to Plaintiff, requesting her to return the forms by February 25.  Ms. Hayes informed Plaintiff that if she failed to return the completed paperwork by February 25, BMC would assume she did not wish to exercise her FMLA rights.

On February 23, Plaintiff's husband, Melvin Moore ("Mr. Moore") appeared at Ms. Hayes's office without an appointment.  According to BMC, Mr. Moore was belligerent and threatened to sue BMC for failing to pay Plaintiff during her medical leave.  Ms. Hayes gave Mr.

Moore a second packet of FMLA paperwork and asked that Plaintiff complete and return the same as soon as possible.  On February 25, Mr. Moore returned to Ms. Hayes's office with an incomplete FMLA packet, including a leave of absence request that Plaintiff had signed but failed to state when she expected to return to work.  (Hayes Dep. Ex. 3).

Plaintiff underwent surgery by Dr. Mentel on March 5, 2009.  On March 6, Plaintiff telephoned Ms. Hayes to inform her the surgery was complete.  Ms. Hayes responded that, because Mr. Moore had threatened to sue BMC on February 23, the matter of Plaintiff's return had been turned over to BMC's local counsel at the offices of Kemmer & Kemmer in Centreville, Alabama.  Ms. Hayes advised Plaintiff that she could not discuss Plaintiff's leave with her, and that Plaintiff should contact the attorneys at Kemmer & Kemmer about her return date.  Ms. Hayes did not provide Plaintiff with contact information for any attorney at Kemmer & Kemmer.  Plaintiff then telephoned Julie Darden, her supervisor, to confirm that she needed to address her return with Kemmer & Kemmer before she came back to work.[4]

Three days later, Dr. Mentel faxed to Ms. Hayes what appears to be a completed FMLA packet with all four forms Ms. Hayes had previously asked Plaintiff to return.  In the packet, Dr. Mentel indicated that Plaintiff should be excused from work between March 5 and March 26. (Hayes Dep. Ex. 3).  Ms. Hayes testified that she received this packet by facsimile on March 9,

---

[4] Plaintiff testified that Ms. Darden told her she could not return to work until she addressed the matter with BMC's local counsel.  (Pl. Dep. pp. 129-30).  Ms. Darden testified that

> A: [Plaintiff] gave me a phone call.  I don't know if it was March or April, I don't know when, and said what is this I hear about me having to go and see Kemmer & Kemmer before returning to work.  And I said all I know is that Kandy Shoults, the [nursing home] administrator, said that you needed to speak with Kemmer & Kemmer.  That was the end of it...
> Q: Did you tell her she couldn't come back to work until she talked to them?
> A: No.

(Darden Dep. p. 14).

2009. (Hayes Dep. pg. 37). The record does not explain what happened to the completed FMLA packet after Ms. Hayes received it. Kandace Shoults, the nursing home administrator at the facility where Plaintiff had worked, testified that completed FMLA packets are typically forwarded to her, but she did not receive a packet for Plaintiff. (Shoults Dep. pg. 28).

During the two weeks that followed, Plaintiff testified that she called the office of Kemmer & Kemmer twice to discuss her return to work. On both occasions, she was unable to speak with an attorney and left a message with an unidentified receptionist. Neither call was returned. On March 22, 2009, Plaintiff applied for unemployment benefits. She stated on her application that she had been "terminated for misconduct" from BMC. The Alabama Department of Industrial Relations forwarded a copy of her application to BMC on March 25. The record is unclear whether BMC received the application on March 25 or on a subsequent date. On March 26, Plaintiff attempted to inquire whether she was scheduled to work the following day. When she failed to reach anyone by telephone, she appeared at the nursing home and discovered that her name was not on the Master Schedule for CNA's. She confirmed that she was not scheduled to return on March 27 with Steve Hemrick, the shift supervisor at the nursing home. Plaintiff never returned to work at BMC. In May 2009, BMC removed Plaintiff's name from its payroll. Plaintiff remains unemployed as of the date of this action.

## II.  PROCEDURAL HISTORY

Plaintiff filed a Complaint in this court on November 10, 2009. She asserted one count against BMC for interfering with her right to job restoration in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*. (Doc. 1). BMC answered the Complaint on December 7, 2009. (Doc. 5). On October 13, 2010, BMC filed the pending Motion for

Summary Judgment, in which it moves for judgment as a matter of law on Plaintiff's interference claim. (Doc. 22). Plaintiff filed a brief in opposition to the motion on November 18, 2010, to which BMC filed a reply on November 29, 2010. (Docs. 28, 29, respectively). The motion is now under submission and ready for decision by the court.

## III.   STANDARD OF REVIEW

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. Once the moving party has met its burden, Rule 56(c) requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *Chapman*, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *Anderson*, 477 U.S. at 249; 106 S. Ct. at 2511.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  *See Fitzpatrick*, 2 F.3d at 1115-17, citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (*en banc*).  If the moving party bears the burden of proof at trial, then it can meet its burden on summary judgment only by presenting positive evidence that demonstrates the absence of a genuine issue of material fact; *i.e.*, facts that would entitle it to a directed verdict if not controverted at trial.  *Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for a directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of any evidence in the record in support of a judgment for the nonmoving party on the issue in

question.  This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the nonmoving party's case.  *Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the nonmoving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts.  *Lewis v. Casey*, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137, 119 L. Ed. 2d 351 (1992).

Although there are cross-motions for summary judgment, each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Chambers & Co. v. Equitable Life Assur. Soc. of the U.S.*, 224 F.2d 338, 345 (5th Cir. 1955)[5]; *Matter of Lanting*, 198 B.R. 817, 820 (Bankr. N.D. Ala. 1996).  The court will consider each motion independently and in accordance with the Rule 56 standard.  *See Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  "The fact that both parties simultaneously are arguing that there is no genuine issue of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." *See* WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE §

---

[5] *See Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (cases decided by the former Fifth Circuit prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit).

2720, at 327-28 (3d ed. 1998).

## IV.    ANALYSIS

The FMLA provides that an eligible employee may take up to twelve workweeks of unpaid leave per year premised on (1) the birth or adoption of a child of the employee; (2) to care for the employee's spouse, child, or parent with a "serious health condition"; or (3) "[b]ecause of a serious health condition that makes the employee unable to perform the functions of" his or her job.  29 U.S.C. § 2612(1).  Employees who take FMLA leave are entitled to be reinstated to the position(s) they held prior to taking leave, or to an equivalent position, with equivalent benefits, pay, and other terms and conditions of employment.  29 U.S.C. § 2614(a)(1).

In her Complaint, Plaintiff alleges that BMC interfered with her right to be restored to her position as a CNA at its nursing home.  In paragraph 10 of her Complaint, Plaintiff claims that "[w]hen Plaintiff called Ms. Hayes about returning to work, she was told that her employment had been terminated."  (Doc. 1 ¶ 10).

Subsequent discovery has revealed that Plaintiff was never told she had been terminated by Ms. Hayes, or by anyone else at BMC.  (Pl. Dep. pg. 134).[6]  In her opposition to BMC's Motion for Summary Judgment, Plaintiff argues instead that BMC prevented her from returning to work after her leave expired, thereby interfering with her right to restoration, even though she had not been expressly told she was terminated.

---

[6] Plaintiff testified as follows:

> Q:    Did anyone associated with Bibb Medical Center ever tell you that you were terminated?
>
> A:    No, sir.

(Pl. Dep. p. 134).

As a preliminary matter, BMC maintains that Plaintiff may not assert this argument in her opposition brief, because it is inconsistent with the facts alleged in her Complaint. BMC urges the court to reject Plaintiff's argument because she did not move to amend her Complaint to include those allegations under FED. R. CIV. P. 15. It cites to *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286 (11th Cir. 2006), for the proposition that a plaintiff may not assert one set of facts in his Complaint, then oppose summary judgment by arguing a wholly separate set of facts in his response brief.

While *Hurlbert* may be cited for that proposition, BMC's reliance on that case is inapposite. In *Hurlbert*, the plaintiff alleged in his Complaint that his employer violated 29 U.S.C. § 2612(a)(1)(D) -- thus interfering with his right to FMLA leave due to his own "serious health condition" -- when it terminated him. However, in his brief in opposition to summary judgment, the plaintiff argued that his termination also interfered with his right to FMLA leave premised on his mother's illness pursuant to 29 U.S.C. § 2612(a)(1)(C). Because the Complaint made no reference to the plaintiff's ailing mother, the Eleventh Circuit held that the plaintiff could not assert the same as an additional ground for denying summary judgment. The court reasoned that the Complaint "provided no notice whatsoever that [the plaintiff] believed he was entitled to leave on this [additional] basis":

> We have previously held that Rule 8(a)'s liberal pleading standard is inapplicable once discovery has commenced, and that "at the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with FED. R. CIV. P. 15(a)." *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam). Hurlbert argues that this rule is inapplicable, because his allegations about his mother do not raise a new "claim," and are merely additional facts asserted in support of the interference claim already pled in his complaint. We disagree. The sole basis for entitlement to FMLA leave pled in Hurlbert's interference claim was *his* alleged serious health condition. *See* 29 U.S.C. § 2612(a)(1)(D). Thus, the

> subsequent assertion of an additional, separate statutory basis for entitlement to leave (caring for a *parent's* serious health condition) effects a fundamental change in the nature of Hurlbert's interference claim. *See id*. at § 2612(a)(1)(C). Having proceeded through discovery without amending (or seeking to amend) his complaint to reflect that fundamental change, Hurlbert was not entitled to raise it in the midst of summary judgment. *See Gilmour*, 382 F.3d at 1315 ("A plaintiff may not amend his complaint through argument in a brief opposing summary judgment.").

*Hurlbert*, 439 F.3d at 1297 (emphasis in original).

BMC likens Plaintiff's shift in argument here, from being told she was terminated in her Complaint to not being told she was terminated but still prevented from returning to work, to the plaintiff's addition of a "separate statutory basis" for relief in *Hurlbert*. The court, however, does not agree that the shift in factual support for Plaintiff's argument is tantamount to a "fundamental change in the nature" of her interference claim. Whether she was specifically told she had been terminated, or whether BMC otherwise prevented her from being restored to her position, the Complaint and the record both suggest that BMC may have interfered with Plaintiff's right to reinstatement. The only question that remains is whether BMC actually interfered with that right, or whether Plaintiff voluntarily abandoned her job, such that BMC should not be held liable therefor under the FMLA. Accordingly, the court rejects BMC's argument that Plaintiff must amend her Complaint to acknowledge that she was never told she had been terminated.

BMC next argues that, if the court permits Plaintiff to maintain the above argument, then the claim is not actionable under the FMLA. Instead, BMC maintains that Plaintiff's claim should be analyzed as a claim for constructive discharge. It argues further that a constructive discharge claim is subject to an "extremely high" standard -- namely, that Plaintiff must demonstrate that her "working conditions were so intolerable that 'a reasonable person in her position would have been compelled to resign.'" *See Poole v. Country Club of Columbus*, 129

F.3d 551, 553 (11th Cir. 1997), (summary judgment for employer inappropriate on claim for age discrimination, where plaintiff demonstrated she had been constructively discharged when employer transferred her to a new position, gave her a chair but no desk, prohibited her coworkers from speaking to her, and declined to assign her any job duties, as proof that she had suffered an adverse employment action related to her age), quoting *Thomas v. Dillard Dep't Stores, Inc.*, 116 F.3d 1432, 1433-34 (11th Cir. 1997), *cert. denied*, 512 U.S. 1221, 114 S. Ct. 2708, 129 L. Ed. 2d 836 (1994).

      The court similarly rejects this argument as without merit. *Poole*, the one authority cited by BMC to support this position, does not stand for the proposition that a plaintiff who alleges she was prevented from returning to her job at the end of her FMLA leave must allege that she was constructively discharged, rather than asserting an interference claim under the FMLA. The court in *Poole* made no reference to the FMLA, even in dicta. The question before that court was whether the plaintiff presented sufficient evidence of constructive discharge to demonstrate an adverse employment action to support her age discrimination claim. This court, therefore, is at a loss as to how *Poole* applies to the facts of this case. BMC fails to explain why the court should construe Plaintiff's interference claim as a claim for constructive discharge premised on *Poole*, when the facts of this case pertain to whether Plaintiff was unlawfully prevented from returning to her job, not whether Plaintiff was forced to endure "intolerable working conditions."

      Nevertheless, BMC appears to argue that Plaintiff cannot maintain a viable interference claim unless she can demonstrate that she was told she had been terminated. BMC offers no authority for this position, and the court finds it wholly unsupported by the FMLA. As previously stated, regardless of whether Plaintiff was told she had been terminated, or was

otherwise prevented from returning to her job, Plaintiff has presented evidence to create at least a factual dispute at to whether BMC interfered with her right to restoration.

Turning to the merits of BMC's motion, the court cannot conclude, as a matter of law, that Plaintiff voluntarily resigned her position with BMC. Rather, the court finds a genuine question of material fact as to whether she abandoned her job voluntarily, or whether BMC's conduct unlawfully prevented her from returning to her job.

BMC urges the court to find otherwise, and emphasizes that Plaintiff applied for unemployment benefits four days before her leave expired. Premised on this single piece of evidence, BMC maintains that it justifiably assumed Plaintiff had resigned her position, and it therefore lawfully omitted Plaintiff from its work schedule after March 26.

The court disagrees. While Plaintiff does not dispute that she applied for unemployment benefits under the auspices of having been terminated, four days prior to learning she was not scheduled to return to work, the court finds a material factual dispute as to whether the circumstances of Plaintiff's separation from BMC were violative of the FMLA. For example, BMC was notified as early as March 9 that Plaintiff had been cleared to return to work after March 26. Plaintiff's application for unemployment benefits, meanwhile, was not mailed to BMC until March 25. The record, as previously stated, does not specify when BMC received the application, or whether it had received the same by the time it issued its work schedule on March 26. Consequently, the court cannot assume that BMC was aware of the application when it omitted Plaintiff from its schedule.

Additionally, the record suggests that Plaintiff may have been justified in assuming she had been terminated when she applied for unemployment benefits as early as March 22. Ms.

13

Hayes testified that, if Plaintiff desired to return to her job, all she needed to do was contact her supervisor, Julie Darden, with that information. Ms. Hayes admitted, however, that when she spoke with Plaintiff on March 6, she did not tell Plaintiff to contact Ms. Darden, but instead told her she (Ms. Hayes) could not speak with her and advised her to contact Kemmer & Kemmer. When Plaintiff contacted Ms. Darden the same day, Ms. Darden also told Plaintiff to contact Kemmer & Kemmer about her return. Plaintiff's unrebutted testimony reveals that she called Kemmer & Kemmer at least twice before she applied for unemployment benefits, leaving messages requesting a return call on both occasions. BMC does not attempt to explain why Plaintiff's calls were not returned. Instead, it implies that Plaintiff simply failed to make enough efforts to communicate her desire to return to work.[7] It cites to no authority to support this position.

The court, therefore, rejects the notion that BMC justifiably assumed Plaintiff had voluntarily resigned -- due to no actions of BMC -- when it received a copy of her application for unemployment benefits. The facts stated *supra* might suggest to a jury that Plaintiff reasonably assumed she had been terminated by the time she applied for unemployment benefits.[8]

---

[7] *See* doc. 29 at 2 of 13 ("Plaintiff states [in her opposition brief] that she 'made repeated phone calls .. requesting that she be returned to work.' However, Plaintiff actually testified to only **one** conversation with Kim Hayes ..., **one** conversation with Julie Darden ..., and **two** conversations with the receptionist at Kemmer & Kemmer after her surgery regarding her physical condition or her ability to return to work. (Moore Dep. at 127:13 to 134:8).") (emphasis in original).

[8] For this reason, the court also rejects BMC's argument that Plaintiff's application for unemployment benefits constituted "unequivocal notice" of her intent not to return to work. To support this argument, BMC points to *Henry v. Fulton County Bd. of Educ.*, 2006 WL 2927533 (N.D. Ga. 2006). In *Henry,* the court held that a school district did not interfere with a teacher's right to FMLA leave when it terminated her, when the teacher had previously made "several statements indicating that she had no plans to return" to work after the school district denied her requests to transfer to another school.

The court finds nothing in *Henry* to suggest that its reasoning applies to an application for unemployment benefits. BMC offers no additional authority, binding or persuasive, to support such an argument. Furthermore,

Aside from Plaintiff's application for unemployment benefits, the court finds little evidence, if any, to support BMC's argument that Plaintiff voluntarily resigned her position. Her last day of work was January 19, 2009, the day she injured her back while assisting a patient. Following that initial injury, Plaintiff provided BMC with multiple work excuses from her physicians, including a note from Dr. Mentel clearly stating that Plaintiff could return to work after March 26.

BMC points out, however, that Plaintiff simply failed to return to work after March 26. Accordingly, by the time it removed Plaintiff from its payroll in May 2009, Plaintiff had ceased to be protected by the FMLA, and could therefore be terminated for cause without interfering with her rights under that statute. While Plaintiff does not dispute that she failed to report to work after March 26, the court is not persuaded, as a matter of law, that she did so because she chose to resign. As previously explained, Plaintiff maintained contact with Ms. Hayes until March 6, 2009. On that date, Ms. Hayes told Plaintiff she could have no further contact with her about her leave. Plaintiff then attempted to reach Ms. Darden, who also directed her to contact Kemmer & Kemmer. Plaintiff, however, was not able to reach an attorney at Kemmer & Kemmer who could address her return to work. Therefore, again, the record contains sufficient evidence upon which a jury could find that Plaintiff did not return to work because she believed she had been terminated. If Plaintiff acted under the assumption that she had been terminated when she filed for unemployment benefits, BMC's failure to schedule her to work four days later did little to dispell that belief.

---

unlike the plaintiff in *Henry*, the record before this court does not suggest that Plaintiff made even one "unequivocal statement" of her *intent* not to return to work. This is particularly the case when, four days after she filed for unemployment benefits, Plaintiff both called and visited BMC to find out if she was scheduled to return to work.

BMC argues that its failure to schedule Plaintiff to work after March 26 "has no relevance to whether Plaintiff was denied reinstatement." (Doc. 29 p. 10, n.5) ("Merely omitting an employee's name from a work schedule does not suggest that the employee ... would not have been allowed to work had she reported for duty following the expiration of her leave."). The court rejects this argument as without merit. If BMC was willing to simply add Plaintiff to the schedule at any time, it does not explain why it did not do so when Plaintiff appeared at its facility on March 26.

Finally, BMC maintains that an employee's right to reinstatement after taking FMLA leave "is not absolute," and that the FMLA allows an employer to impose certain conditions on an employee's return to work. Specifically, BMC points to 29 U.S.C. § 2614(a)(4), under which employers may require an employee to submit to a "fitness for duty" examination before returning to work. BMC explains that "conditions placed on the right to reinstatement not resulting in any damage to the plaintiff do not give rise to an interference claim." (Doc. 29 p. 8). The court finds this argument particularly unimpressive, in light of the fact that this entire case turns on whether Plaintiff was, in fact, damaged when BMC conditioned her return upon discussing the matter first with its attorneys.

The cases cited by BMC in support of its motion are similarly unavailing. While BMC offers multiple authorities which, according to it, should compel this court to enter a summary judgment in its favor, none of them are on point with this action. *See Drago v. Jenne*, 453 F.3d 1301 (11th Cir. 2006) (pursuant to 29 C.F.R. § 825.310(f), employer may require a return-to-work authorization signed by employee's physician before allowing employee to return to work from FMLA leave; no adverse action to plaintiff's employment where he was required to remain

on paid FMLA leave, pending return of signed authorization, before being reinstated to former position); *Martin v. Brevard County Public Schools*, 543 F.3d 1261 (11th Cir. 2008) (question of fact whether school district interfered with employee's right to FMLA leave, where district required employee to complete job performance plan before June 30, and employee was terminated for taking FMLA leave prior to plan's expected date of completion); *Diaz v. Transatlantic Bank,* 367 Fed. Appx. 93 (11th Cir. 2010) (employer permitted to require return to work authorization signed by physician prior to allowing employee to return from FMLA leave; employer does not interfere with right to restoration by terminating employee who fails to provide authorization upon expiration of 12-week statutory maximum leave, and who requests an additional four weeks to obtain authorization); *Smith v. Boyd Bros. Transp., Inc.*, 406 F. Supp. 2d 1238 (M.D. Ala. 2005) (employer interfered with FMLA rights by terminating employee while employee on FMLA leave; no substantive discussion of interference claim); *Johnson v. Morehouse College, Inc.*, 199 F. Supp. 2d 1345 (N.D. Ga. 2002) (employer may convert employee's leave status from paid administrative leave to unpaid FMLA leave following occurrence of FMLA qualifying event; employer not required to notify employee of change in leave status); *Murray v. Red Kap Industries, Inc*., 124 F.3d 695 (5th Cir. 1997) (employer did not interfere with right to restoration by terminating employee for failing to establish "serious medical condition" while on FMLA leave); *Brown v. J.C. Penney Corp*., 924 F. Supp. 1158 (S.D. Fla. 1996) (employer did not interfere with right to restoration by terminating employee, when employee took FMLA leave to care for dying father, and did not return to work until one month after father passed away; FMLA does not provide leave to allow employee to close out deceased parent's business affairs); *Baldwin-Love v. Electronic Data Systems Corp*., 307 F. Supp. 2d 1222

(M.D. Ala. 2004) (employer does not interfere with right to restoration where employee faxes, after deadline expired, return-to-work authorization that does not include physician's signature or physician's statement that employee could perform her job); *Ferguson v. American Proteins, Inc.*, 2005 WL 1705535 (M.D. Ga. 2005) (summary judgment granted to employer that terminated employee for failing to return to work after FMLA leave expired; claims for race discrimination asserted under Title VII and 42 U.S.C. § 1981, not FMLA; no discussion of whether termination interfered with FMLA right to restoration); *Mayland v. St. Joseph Medical Center*, 2001 WL 708815 (D. Md. 2001) (employer did not interfere with plaintiff's right to restoration when it terminated employee who failed to establish that she continued to suffer a serious health condition after scheduled FMLA leave ended); *Henry v. Fulton County Bd. of Educ.*, 2006 WL 2927533 (N.D. Ga. 2006) (teacher failed to report to work after informing school district she did not intend to return for new school year; school district did not interfere with teacher's right to FMLA leave by terminating her for insubordination, after giving her 12 weeks of paid leave).

None of these cases address the issue that is before this court: whether an employee, who (1) gives her employer notice of the date she may return to work, but (2) is omitted from the work schedule after that date, and (3) is told to contact her employer's attorney before returning, but (4) the attorney does not return her telephone calls, should be considered to have voluntarily abandoned her job when she fails to report to work at the end of her FMLA leave. BMC argues that she should. Neither the case law addressed in this opinion, nor the facts of record in this case, support that argument as a matter of law. Accordingly, BMC's motion for summary judgment is due to be denied.

## IV. CONCLUSION

Premised on the evidence of record, the arguments of both parties, and authorities relevant to this matter, the court concludes that the question whether Plaintiff voluntarily resigned her position with BMC, or whether she was terminated in violation of her rights under the FMLA, is a question of fact to be decided by a jury. Consequently, the court finds that BMC is not entitled to a judgment as a matter of law on Plaintiff's interference claim. BMC's Motion for Summary Judgment is, therefore, due to be **DENIED.** An appropriate Order will be entered contemporaneously herewith.

**DONE**, this 31st day of March, 2011.

*/s/ John E. Ott*

**JOHN E. OTT**
United States Magistrate Judge